[Civ. No. 4084. Fifth Dist. Sept. 26, 1979.]

BENJAMIN NATHAN ROMO, a Minor, etc., Plaintiff and Appellant, v. ESTATE OF CHARLES R. BENNETT, Deceased, Defendant and Respondent.

**COUNSEL**

Jerold L. Bloom and Robert M. Fox for Plaintiff and Appellant.

Diepenbrock, Wulff, Plant & Hannegan, John J. Hannegan, Peter M. Doyle and Charity Kenyon for Defendant and Respondent.

**OPINION**

**HOPPER, J.**—In this action for damages limited to the extent of liability insurance for medical malpractice alleged to have taken place in 1965 but not discovered by due diligence until 1975, appellant appeals from a

summary judgment entered in favor of the respondent grounded upon an alleged bar of Probate Code section 721 enacted in 1971.[1] We reverse.

Appellant, Benjamin Nathan Romo (hereinafter Benjamin) was born in Merced, California, on February 5, 1965. Dr. Charles R. Bennett was the attending physician. Dr. Bennett died on February 12, 1966. His estate was thereupon probated. The date of first publication of notice to creditors in that estate was December 10, 1966. No claim was filed on behalf of appellant within the statutory six-month period as then provided in the Probate Code. Final distribution of the estate was made on October 9, 1967.

Sometime within a year after Benjamin's birth it was discovered that he was blind. Eventually Benjamin's father, based on discussions with various doctors, was informed that Benjamin's blindness resulted from oxygen given to him at birth. In 1975 Benjamin's father was made aware of the possibility that Benjamin's injuries may have been caused by Dr. Bennett and other defendants at the time of Benjamin's birth. In April of 1975 Benjamin's father retained an attorney to look into the matter. On July 11, 1975, suit was filed, originally against the hospital in which Benjamin was born but subsequently amended to include Dr. Bennett. Dr. Bennett had malpractice insurance issued by Truckers Insurance Exchange. The action against the estate of Bennett, deceased, was filed pursuant to Probate Code section 721 and was limited to the liability insurance.

Respondent's motion for summary judgment was granted on the theory that the cause of action was barred by section 721.

Appellant argues, inter alia, that the Probate Code statute of limitations does not bar unaccrued causes of actions limited to liability insurance only. We agree.

---

[1]Probate Code section 721 states in pertinent part: "(a) Notwithstanding any other provision of law, the presentation or filing of a claim shall not be required and a civil action may be maintained by a claimant to establish, to the limits of the insurance protection only, a liability of the decedent for which the decedent was protected by liability insurance."

Statutes 1971, chapter 1638, section 4, page 3534, which enacted Probate Code section 721, provided in pertinent part: "Neither Section 709.1 nor Section 721 of the Probate Code as enacted at the 1971 Regular Session of the Legislature, shall apply to an action specified in Section 709 of the Probate Code pending at, or to a claim presented or filed before, its effective date; nor shall either such section revive any claim previously barred by Chapter 12 (commencing with Section 700) of Division 3 of the Probate Code."

Probate Code section 721 extended the period of limitation to existing causes of action which were not yet barred by the old period (*Eken* v. *Bosworth* (1977) 72 Cal.App.3d 248, 252 [139 Cal.Rptr. 834]).

The enacting clause to Probate Code section 721 was designed to make the section prospective rather than retroactive (see *Review of Selected 1971 California Legislation, Administration of Estates* (1971) 3 Pacific L.J. 197, 200). Consequently, Probate Code section 721 does not apply to: (1) a cause of action pending at its effective date, (2) a claim presented before its effective date, (3) a claim filed before its effective date, or (4) a claim previously barred. None of these claims or causes of action may be "revive[d]" in the sense used in the statute.

Revive means: to bring back to life; to make effective or operative again; to renew. The word is derived from the Latin revivere, coming from re—again, plus vivere—to live (Funk & Wagnalls Standard College Dict. (1973) p. 1151, col. 2).

■   Time of accrual of a cause of action is an issue of fact. (*Wozniak* v. *Peninsula Hospital* (1969) 1 Cal.App.3d 716, 725 [82 Cal.Rptr. 84].) A careful analysis of the cause of action set forth in the instant case shows that insofar as the record before the trial court on the motion for summary judgment this cause of action did not arise until 1975.   ■   The statute of limitations in a suit for malpractice commences to run when the plaintiff discovers the injury and its negligent cause or through the exercise of reasonable diligence should have discovered it and where a minor is involved it is knowledge of the parent. (*Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 885 [112 Cal.Rptr. 540, 519 P.2d 588], quoting with approval *Wozniak* v. *Peninsula Hospital, supra,* at pp. 722-723.) Unless the cause of action accrued *before* the effective date of Probate Code section 721 there is nothing subject to being revived.

Reliance by respondent on cases such as *Hurlimann* v. *Bank of America* (1956) 141 Cal.App.2d 801 [297 P.2d 682], *Bartman* v. *Estate of Bartman* (1978) 83 Cal.App.3d 780 [148 Cal.Rptr. 207], *Segovia* v. *Superior Court* (1976) 55 Cal.App.3d 464 [127 Cal.Rptr. 501], and *Wagner* v. *State of California* (1978) 86 Cal.App.3d 922 [150 Cal.Rptr. 489], are to no avail. *Hurlimann* was decided *before* Probate Code section 721 and was against the estate rather than being limited to the liability insurance. The governing statute in *Hurlimann* was Probate Code section 707 which

barred all claims for damages which were not filed or timely presented.[2] *Bartman* involved an automobile accident under the guest statute before that statute was held invalid in *Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]. *Bartman* was not a case of an unaccrued cause of action. To permit *Bartman* to recover would have revived an already barred claim. *Segovia* was a wrongful death action instituted *before* the effective date of Probate Code section 721. It was barred by the express provisions of the enacting clause of Probate Code section 721. It was not a revival nor was it an unaccrued cause of action. *Wagner* was an action under Code of Civil Procedure section 337.1 which expressly provided that any action under that section was barred after the four-year period unless *expressly* exempted therein. *Wagner* was a cross-complaint for indemnity based on *patent* defects as contrasted with latent defects. There was no accrual issue involved.

█ Simply stated the instant action not being a revival of a barred claim is not barred. The cause of action here needed no revival and it came into being only *after* the effective date of Probate Code section 721.

In light of our holding it is unnecessary to discuss the remaining contentions of appellant.

Judgment is reversed.

Franson, Acting P. J., and Zenovich, J., concurred.

A petition for a rehearing was denied October 23, 1979, and the opinion was modified to read as printed above.

---

[2]Respondent further calls the court's attention to the fact that the California Supreme Court in *Nathanson* v. *Superior Court* (1974) 12 Cal.3d 355, 362 [115 Cal.Rptr. 783, 525 P.2d 687], cited *Hurlimann* with approval. However, that citation was merely for the proposition that all claims *against an estate* must be filed within the time prescribed in the notice to creditors or the claim is barred forever. The instant case is *not* against the estate in the ordinary sense—the estate assets are unaffected because a judgment in favor of a claimant under Probate Code section 721 is enforceable only from the insurance protection. Furthermore, *Nathanson* in the same reference to *Hurlimann* stated that the rule had certain exceptions nor there applicable and in footnote 3 at page 362 listed the exceptions *including* Probate Code section 721.